Jade Riley Burch
Plaintiff, Pro Se
222 Karen Avenue, Unit 1207
Las Vegas, NV 89109
Tel: (614) 725-9452
Email: jaderburch@gmail.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **Jade Riley Burch,**<br><br>Plaintiff, Pro Se,<br><br>vs.<br><br>**Dignity Health**, a foreign nonprofit corporation, d/b/a St. Rose Dominican Hospital, Siena Campus; **CommonSpirit Health**; **Bobby Thomas, MD**, in his individual capacity; and Does 1 through X, inclusive,<br><br>Defendants | Case No.: 2:26-cv-03474-APG-BNW<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT DIGNITY HEALTH'S MOTION TO DISMISS COMPLAINT** |

## I. Introduction

Dignity Health's motion runs eleven pages and cites two cases, both federal pleading-standard decisions. It asks the Court to dismiss seven Nevada tort counts without citing Nevada authority or reciting the elements of any of them. It skips Count V entirely, yet asks that the Complaint be dismissed "in its entirety."

The motion's organizing move is to relabel every allegation as a matter of "healthcare judgment and patient management." Mot. 3:19-20. Defendants' own records answer that characterization. Registration staff certified that a notarized instrument Plaintiff had handed them did not exist. Compl. ¶ 19. Staff told Plaintiff, and her designated agent in her presence, that she was "on a legal hold," and Defendants' systems printed "L2K" on her meal receipts for three days, although no crisis-hold instrument was ever completed and the attending physician documented

that "[n]o medical hold [was] needed." Compl. ¶¶ 25-27. Defendants' orders directed staff to "Ambulate" her and anticipated discharge the first day. She spent three days confined to a bed. Compl. ¶¶ 32-35. A sex-designation field changed mid-admission and rewrote the reference ranges against which her blood work is read. Compl. ¶ 50. None of that requires medical art, science, or expertise to perform or to evaluate.

The rest of the motion demands proof of facts, such as which employee changed the sex field, that sit in Defendants' audit trails and within their exclusive control. The pleading rules and Ninth Circuit Doe practice accommodate a plaintiff in that position. The motion should be denied.

## II. Standard

A complaint survives Rule 12(b)(6) if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where "there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Dismissal follows "only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Id.* at 1216-17.

Courts "continue to construe pro se filings liberally when evaluating them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Liberal construction governs how the Court reads Plaintiff's allegations; Plaintiff does not invoke it as a substitute for them. Allegations on information and belief are sufficient where "the facts are peculiarly within the possession and control of the defendant." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citation omitted).

This Opposition relies on nothing outside the Complaint, which quotes Defendants' own orders, face sheets, notes, laboratory comments, and discharge documents verbatim. Those quotations are allegations the Court accepts as true. Should Defendants' reply offer other records of their own selection, incorporation by reference does not permit "defendants [to] use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002-03 (9th Cir. 2018).

## III. Argument

### A. The motion does not address Count V or five other propositions.

Count V pleads intentional infliction of emotional distress against all Defendants. Compl. ¶¶ 79-82. Dignity Health's memorandum never names the tort, never recites its elements, and never mentions any of the four paragraphs pleading it. The motion's Section C concludes that "Counts II and III should be dismissed," Mot. 7:5-6, and its Section D moves from "Count IV" to "Count VI" to "Count VII," Mot. 7:7-8:6. Count V is passed over in Defendants' own sequence. The prayer nonetheless asks the Court to dismiss the Complaint "in its entirety." Mot. 10:2-4.[1]

The movant bears the burden of showing that a challenged claim fails as a matter of law, and Dignity Health has not attempted to carry it as to Count V. Dismissing the count would mean dismissing it on grounds no party has articulated, which the Ninth Circuit permits only after notice and an opportunity to respond in writing. *Wong v. Bell*, 642 F.2d 359, 361-62 (9th Cir. 1981). This Court has denied a motion to dismiss as to a discrete ground the movant left unsupported,

[1]Nevada's elements are extreme and outrageous conduct, intent to cause or reckless disregard for causing emotional distress, severe emotional distress, and causation. *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998). Whether conduct is extreme and outrageous is ordinarily for the jury. *Posadas v. City of Reno*, 109 Nev. 448, 456, 851 P.2d 438, 444 (1993). Count V pleads each element. Compl. ¶¶ 79-82.

citing LR 7-2(d), while granting the same motion on other grounds.[2] Count V should proceed whatever the Court does with the remaining counts.

The motion leaves five further propositions unbriefed: (1) that Plaintiff is a vulnerable person within NRS 41.1395(4)(e), an element grounded in Defendants' own problem list, Compl. ¶ 83; (2) Plaintiff's alternative neglect theory under NRS 41.1395(4)(c), which requires no showing of willfulness, Compl. ¶ 85; (3) deliberate indifference under Section 504 and Section 1557, Compl. ¶ 96; (4) vicarious liability for the personnel who performed the acts alleged, Compl. ¶¶ 7-8, 68, 97;[3] and (5) why amendment would be futile, although the motion seeks dismissal of Counts VIII through XII *with prejudice*.

Dignity Health alone moved. CommonSpirit Health, Dr. Thomas, and the Doe Defendants have not joined, and Plaintiff addresses the motion on that footing.

**B. Plaintiff cannot supply names that only Defendants hold.**

The motion's recurring complaint is that Plaintiff does not know who did what: who changed the sex-designation field or whether an automated rule did it, Mot. 8:15-17; when the directive was received, scanned, indexed, or routed, Mot. 6:3-7; or which employee "was inadequately trained," Mot. 8:1-2. Each statement is accurate. None identifies a pleading defect.

---

[2] LR 7-2(d) ("The failure of a moving party to file points and authorities in support of the motion constitutes a consent to the denial of the motion."). Where the movants did not "identify what privilege they are invoking, cite any law, or make any argument in support," this Court denied "this portion of the motion" while granting it as to other counts. *Waggoner v. Nye County*, No. 2:21-cv-01312-APG-EJY (D. Nev. Apr. 30, 2022) (Gordon, J.).

[3] *Duvall v. County of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001) (public entity "is liable for the vicarious acts of its employees" under the Rehabilitation Act and Title II); *Prell Hotel Corp. v. Antonacci*, 86 Nev. 390, 469 P.2d 399, 400 (1970) (employer liable for intentional tort within "the scope of the very task assigned").

Defendants confined Plaintiff to a bed in a glass-walled emergency department room for three days, sent her laptop and telephone out of the building at admission, and permitted her no pen or other writing implement. Compl. ¶¶ 31, 33, 35. When she asked for the Hospital's legal counsel, she was told the Hospital had none; when she asked for Risk Management, she was told it was not there. Compl. ¶ 35. Nevada requires a hospital, on admission, to give the patient "[t]he name and contact information for persons to whom such complaints and grievances may be expressed," together with instructions for filing a complaint with the Division. NRS 449A.118(3)(a)-(c). Defendants gave her none of it. Compl. ¶ 35. They created the conditions under which a patient cannot record a name and now seek dismissal because she does not have one.

The names exist and Defendants hold them. Their admission records identify the registration employee who witnessed the form as "Thompson, Tameka - SRDH." Compl. ¶¶ 8, 19. The personnel who entered the observation orders, administered the lorazepam, threatened the safety device, and altered the sex designation are recorded in Defendants' order entries, medication administration record, and audit trails. Compl. ¶¶ 8, 37, 51. Where defendants' identities are unknown before filing, the plaintiff "should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *accord Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999). Neither exception applies, and Plaintiff has pleaded that she will amend to state true names when ascertained. Compl. ¶ 8.

Learning a name will not supply a missing element of any claim. The elements are pleaded now, from Defendants' own records. Identities go to which individuals share liability with the entity Defendants, not to whether the conduct occurred, when it occurred, or what it did.

**C. Administrative failures are not clinical judgments.**

The motion's premise is that Plaintiff has "recast" medical treatment as torts and civil-rights violations. Mot. 5:10-21. Count I rests on records administration, communication, and discharge logistics: certifying in writing that no directive existed; recording fourteen hours later that no copy had been obtained; failing to route the instrument to anyone treating her; failing to notify Plaintiff or her agent of any deviation, or to document one; failing to transfer her care; and discharging her with no notice, no acknowledgment, no supply, and no device. Compl. ¶¶ 61-62. Registration and health-information personnel performed those functions. Nevada treats non-clinical staff's mishandling of a power-of-attorney instrument as ordinary negligence and permits a single complaint to plead both ordinary and professional negligence.[4]

Defendants' own orders refute the clinical-judgment framing a second way. If the restrictions Plaintiff challenges were exercises of medical judgment, they would appear in the orders. They do not. The order set entered at 7:07 p.m. on July 22 directed staff to "Ambulate" Plaintiff and to "Advance Activity as Tolerated," Compl. ¶ 34, and contemplated an "anticipated discharge today" with a stay of "0-1 days - < 2 midnights anticipated," Compl. ¶ 32. She was confined to a bed, escorted to the restroom and back, and held through two midnights into a third

---

[4]*DeBoer v. Senior Bridges of Sparks Family Hosp., Inc.*, 128 Nev. 406, 282 P.3d 727, 731-32 (2012); *Szymborski v. Spring Mountain Treatment Ctr.*, 133 Nev. 638, 403 P.3d 1280, 1286 (2017) (discharge logistics are "nonmedical functions"). *Limprasert v. PAM Specialty Hospital of Las Vegas LLC, 140 Nev. 418, 550 P.3d 825,* 829-31 (2024), turned the inquiry to "the nature of the conduct" and left *DeBoer* and *Szymborski* undisturbed. A state affidavit-of-merit condition is in any event displaced in federal court by Rule 8. *Berk v. Choy*, 607 U.S. 187 (2026).

day, and the produced records identify no order extending the stay. Compl. ¶¶ 32, 34. A restriction that contradicts the treating orders is not an application of them.

Count III rests on a custodial authority Defendants never obtained, Count VIII on the denial of requested modifications, and Count X on the alteration of a protected characteristic in a medical record. Dignity Health engages none of it. Its assertion that the conduct was driven by "reported suicidal ideation, patient-safety concerns, psychiatric evaluation, and medical decision-making," Mot. 4:5-8, is a merits defense offered as fact. At most it supplies a competing explanation, which under *Starr* is not enough.

**D. Count I pleads duty, breach, causation, and damages.**

Dignity Health argues that Nevada's advance-directive statutes create no private damages remedy. Mot. 5:25-28. Plaintiff agrees and said so. She pleads those statutes "as the source of the duties Defendants owed upon presentation of the instrument," not as "a free-standing statutory action for damages." Compl. ¶ 62. Borrowing a statutory standard to supply the duty element of an ordinary negligence claim is routine. The motion attacks a claim the Complaint does not plead.

The duties are specific, and several are unconditional. "Upon being presented with an advance directive for psychiatric care, an attending physician or other provider of health care shall make the advance directive a part of the principal's medical record." NRS 449A.630. That duty attaches on presentation and carries no capacity trigger. The statutory form under NRS 449A.621 requires the provider to "promptly notify the principal and, if applicable, the agent of the principal, and document in the principal's medical record any act or omission that is not in compliance with any part of an advance directive." NRS 449A.636 requires compliance when the directive is operative, and NRS 449A.639 requires a provider unable to comply to "take all reasonable steps as promptly as practicable to transfer the psychiatric care of the principal." NRS 433A.190(5)

requires that an agent designated under a durable power of attorney for health care be "promptly notified of the admission," "regardless of whether the person alleged to be a person in a mental health crisis has given permission." Federal law separately obligates Dignity Health, as a Medicaid participant, "to document in a prominent part of the individual's current medical record whether or not the individual has executed an advance directive." 42 U.S.C. § 1396a(w)(1)(B).

What Defendants documented in that part of the record was false. Within fourteen hours their registration records held three inconsistent states: a 3:31 p.m. face sheet with the "ADV DIR" field blank; Conditions of Admission certifying at 5:07 and 5:08 p.m. that "[t]he Patient does not have a written advance directive about health care decisions"; and a 5:52 a.m. face sheet reading "ADV DIR: 2 COPY NOT OBTAINED." Compl. ¶ 19. Not one is accurate. Completing that field called for no clinical judgment, only a look at the document Plaintiff had handed over.

The discharge carried its own duties. A hospital must give an inpatient the opportunity to designate a caregiver before discharge, NRS 449A.315(1), and, with consent, must attempt to notify the caregiver and provide a discharge plan describing necessary aftercare, NRS 449A.321; NRS 449A.324. Defendants discharged Plaintiff with no notice to the agent they had put out of the building, no acknowledgment, no medication supply, and no device, under a packet captioned "Inpatient Discharge Instructions." Compl. ¶¶ 44, 48, 62.

On causation, the motion says the directive "was eventually scanned into the medical record." Mot. 6:2-3. The word "eventually" is the problem. The scan bears a result and authentication time of 11:15 a.m. on July 24, fifty-seven minutes after the attending signed the discharge summary and three days after Plaintiff handed the instrument to staff, in the same batch as her discharge instructions and consent forms. Compl. ¶¶ 1, 18. A duty whose purpose is to put the instrument in front of the people making treatment decisions is not discharged by a scan

processed after those decisions are over. Plaintiff does not contend the timestamp alone fixes when the instrument first became electronically available. She pleads that the records do not show when it became available, whether it was flagged or routed, or whether anyone treating her saw it, and that those facts lie in Defendants' audit trails. Compl. ¶ 60. That is a *Soo Park* allegation, not a pleading defect.

The motion's last point is that Plaintiff "remained competent throughout," so the directive never became operative. Mot. 6:10-14. Rule 8(d)(2) and (3) permit exactly the alternative pleading Plaintiff made. If she retained capacity, her contemporaneous refusals governed, and the record-incorporation, notification, and documentation duties still attached. If Defendants contend otherwise, they must identify the determination NRS 449A.624 requires, by two providers of health care, one the attending physician or a licensed psychologist. The records contain none. Compl. ¶ 59. Defendants cannot treat Plaintiff as competent enough to execute binding admission paperwork at 5:08 p.m. and too impaired for her spoken refusals to count.

Two features of the statute foreclose any argument that an exception applies. The exception in NRS 449A.636(1)(d) applies where the principal is admitted "pursuant to NRS 433A.145 to 433A.330, inclusive." No instrument under those sections was ever completed, so no such admission occurred. Compl. ¶¶ 27, 72. And even where an exception applies to one part of a directive, "all other parts of the advance directive must be followed." NRS 449A.636(2).

**E. Count II states battery and assault.**

**Battery.** Dignity Health says Plaintiff fails to plead "intentional harmful or offensive contact" or "circumstances establishing lack of consent." Mot. 6:18-22. The Complaint alleges that hospital personnel accessed a port surgically implanted in Plaintiff's right internal jugular and pushed intravenous lorazepam into her bloodstream on at least three occasions, and that she

"refused each administration she recalls, in words, to the staff member performing it." Compl. ¶¶ 36-37, 64, 66. A needle into an implanted port is a contact. A competent adult's contemporaneous spoken refusal is the absence of consent.[5]

Defendants' own orders supply a second ground. The standing order read "LORazepam: 1 mg, IV Push, q4hr, PRN: Seizures," and the attending's plan confined the drug to "Ativan IV for active seizure." Compl. ¶¶ 36, 66. Each administration Plaintiff recalls occurred while she was conscious, alert, and not seizing. Compl. ¶ 37. A contact outside the stated indication of the defendant's own order is not authorized by that order.

**Assault.** Dignity Health argues only that "the anticipated conduct never occurred and that the device was ultimately removed without the threatened action being carried out." Mot. 6:25-28. That describes assault; completion would be battery. Nursing staff stood over a patient they had told was legally detained and announced they would cut a locking device from her wrist if a key could not be produced. Compl. ¶¶ 42, 67. Plaintiff's surrender of an emergency key was compliance extracted by that threat.

**F. Count III states false imprisonment.**

**There is no attempted-escape element.** The motion faults Plaintiff for not alleging that she "attempted to leave the Hospital and was physically prevented from doing so." Mot. 7:2-4. Nevada requires only proof that "the person be restrained of his liberty under the probable imminence of force without any legal cause or justification." *Marschall v. City of Carson*, 86 Nev. 107, 110, 464 P.2d 494, 497 (1970); *accord Hernandez v. City of Reno*, 97 Nev. 429, 634 P.2d 668, 671 (1981) (adopting Restatement (Second) of Torts § 35 (1965): intent to confine, resulting

[5] *Humboldt Gen. Hosp. v. Sixth Judicial Dist. Court*, 132 Nev. 544, 376 P.3d 167, 172 (2016) (where a plaintiff "claims not to have consented at all," the claim is battery and NRS 41A.071 does not apply).

confinement, and the plaintiff's consciousness of it). Nothing in that formulation asks whether the plaintiff tested the confinement, and legal justification is an affirmative defense Defendants must plead and prove. *Marschall*, 464 P.2d at 497.

**Defendants asserted custody, not advice.** A Legal 2000 is the instrument by which a person is taken "into custody" for emergency admission. NRS 433A.160. Defendants did not tell Plaintiff that leaving would be medically unwise. They told her, and Ms. Ryan in her presence, that she was "on a legal hold," and their systems printed "L2K" on her meals at every meal for three days. Compl. ¶¶ 25-26. Plaintiff knew what that meant: she had been placed on an actual Legal 2000 in 2023 and understood that an attempt to walk out invites physical restraint or escalation of the commitment process. Compl. ¶¶ 26, 73. Defendants' own network had applied the classification to her five days earlier, recording at its San Martin campus that she "will be placed in L2K for further psychiatric evaluation." Compl. ¶ 26. A patient told she is in legal custody does not understand herself free to leave, and Nevada does not require her to find out by provoking a confrontation with hospital security. That is the probable imminence *Marschall* describes.

Every outward circumstance confirmed the representation. Defendants assigned a one-to-one observer eighteen minutes after she walked in, confined her to a bed, posted a guard at the toilet door, sent her clothing and effects out of the building, and excluded the agent who was her only channel to the outside. Compl. ¶¶ 30-35, 69. She had no counsel, no telephone, no writing implement, and no patient advocate, and the only people who knew whether a hold instrument existed were the people telling her she was held. Compl. ¶ 35. Had Defendants disclosed that no legally effective hold existed, Plaintiff would have requested discharge or left. Compl. ¶ 73. A

hospital does not defeat liability for misrepresenting a patient's legal status by pointing to the exit the misrepresentation concealed.

**Voluntary arrival is not consent to custody.** Plaintiff did present voluntarily and twice asked to be admitted voluntarily to a psychiatric facility. Defendants' records state that staff were "unsuccessful at obtaining placement for voluntary hold in psychiatric facility." Compl. ¶ 23. She was never admitted to one. Compl. ¶¶ 23, 70. Consent to voluntary psychiatric admission is not consent to three days in an emergency department bed under an asserted legal hold.

**Defendants' records cut against them either way.** At 7:25 p.m. on July 22, after the restrictions were in place, Defendants told Plaintiff in writing that she had been placed "as an Outpatient" and had "not been admitted as an Inpatient." Compl. ¶ 44. Their discharge summary says psychiatry saw her "while inpatient," and the discharge packet is captioned "Inpatient Discharge Instructions." *Id.* If the notice was accurate, Defendants held an outpatient under a custodial classification they had no authority to apply. If it was not, their records misstate the admission they imposed.

**No justification survived.** Defendants met none of Chapter 433A's conditions: no authorized person placed a hold under NRS 433A.160, no form under NRS 433A.085 was completed, no certificate under NRS 433A.170 was executed, and no petition or order exists. Compl. ¶¶ 27, 72. Plaintiff's referring provider, herself authorized to place a hold, placed none. Compl. ¶ 21. By the morning of July 23 the attending had documented that no medical hold was needed and Plaintiff had denied suicidal ideation; by that evening the consulting psychiatrist had cleared her for discharge home. Defendants held her through that night anyway. Compl. ¶¶ 45-46, 73.

**G. Counts IV, VI, and VII survive.**

**Negligence per se (Count IV).** The motion says Plaintiff does not explain how each statute supplies a standard and caused injury. Mot. 7:12-17. Count IV does so predicate by predicate and satisfies both Nevada conditions: the plaintiff is within the protected class, and the injury is the type the statute guards against. *Ashwood v. Clark County*, 113 Nev. 80, 930 P.2d 740, 744 (1997).[6] NRS 449A.106(9) guarantees a patient the right to receive "visitors of the patient's choosing," subject only to "reasonable restrictions as to time and place." Defendants imposed exclusion, not a restriction as to time or place, and removed the agent Plaintiff had designated in a notarized instrument. NRS 449A.112(1)(b) secures the right to "[r]efuse treatment to the extent permitted by law." The injury is the administration of intravenous lorazepam over a competent adult's contemporaneous refusal. Compl. ¶¶ 76-77. Each predicate is a legislative enactment, not an administrative regulation.

**NRS 41.1395 (Count VI).** The motion characterizes the allegations as "treatment decisions, psychiatric evaluation, patient monitoring, medication management, and discharge planning." Mot. 7:21-24. They concern a three-day confinement on an authority Defendants never obtained; the exclusion of a designated caregiver; a threat to bring a cutting instrument to a patient's wrist; and the stripping of her clothing with no provision for clothing at any point, so that she left dressed only because Ms. Ryan brought back the clothing Defendants had made her surrender. Compl. ¶¶ 48, 84-85.

Defendants' own documents establish two further deprivations. Their records identify Plaintiff's scheduled intravenous hydration, "every Tuesday, Thursday, and Saturday," among the

---

[6]Negligence per se borrows the legislative standard to supply duty and breach and does not require a private right of action. *Ashwood*, 930 P.2d at 743-44.

needs that placed her in a medical bed rather than a psychiatric facility. The confinement spanned a Thursday, and no infusion was given. Compl. ¶ 40. Defendants held Plaintiff for a capability they never used. And the discharge packet lists her medications as "Unchanged" while carrying aripiprazole at 15 mg and sertraline at 50 mg daily, when Defendants' own note two days earlier recorded her home doses as 5 mg and 25 mg, with no prescription, dispensing record, or supply. Compl. ¶¶ 39, 48.

The statute reaches willful and unjustified deprivation of clothing or necessary services, and Plaintiff pleads neglect in the alternative, which requires no willfulness.[7] The vulnerable-person element, which Defendants do not contest, is grounded in their own problem list. Compl. ¶ 83.

**Negligent training and supervision (Count VII).** Section B answers the naming objection. Nevada requires no more specificity. In *Hall v. SSF, Inc.*, a one-sentence allegation that defendants "were negligent in failing to adequately train and supervise their managing agent and employees" sufficed, because "Nevada is a notice pleading jurisdiction and we liberally construe pleadings to place matters into issue which are fairly noticed to the adverse party." 112 Nev. 1384, 930 P.2d 94, 98 (1996).[8] Count VII pleads far more: the registration workflow that produced the false certification and the employee who witnessed it; the nursing staff who announced a hold no one had placed and threatened to cut the device; the systems that printed a custodial classification on her meals; and the document-management process that returned the directive after her

---

[7]NRS 41.1395(4)(a), (c), (e). The statute does not apply where a defendant "did not know or have reason to know that the harmed person was a vulnerable person," NRS 41.1395(3), a limitation Defendants' own problem list defeats. Compl. ¶¶ 83-85, 87.

[8]The employer's duty is to use reasonable care to ensure employees "are fit for their positions," *Hall*, 930 P.2d at 99, and lack of notice of a particular employee's propensities does not relieve the employer of that general duty, *Rockwell v. Sun Harbor Budget Suites*, 112 Nev. 1217, 925 P.2d 1175, 1181 (1996).

discharge summary. Compl. ¶¶ 8, 19, 88-89. Whether Defendants exercised reasonable care in training and supervising those personnel is a question of fact.

**H. Counts VIII through X: receiving care is not a defense to denying accommodations.**

Dignity Health's answer to the disability counts is that Plaintiff "received the very services she contends were denied." Mot. 8:5-9. Plaintiff does not allege she was turned away. She alleges Defendants refused specific modifications tied to disabilities they knew of: physical presence for her designated agent; retention of a locking GPS device guarding an elopement risk their own problem list records as active; notification of her agent before sedating medication or any change to her psychotropic regimen; continuation of her prescribed hydration protocol; and a means of communication and of writing. Compl. ¶ 93. Under Title III, a public accommodation discriminates by "failing to make a reasonable modification in 'policies, practices, or procedures,'" and identical treatment is no defense, because discrimination includes "treating a disabled patron the same as other patrons despite the former's need for a reasonable modification." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082, 1086 (9th Cir. 2004).

Notice triggered a duty to investigate. An entity on notice "is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation." *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1207 (9th Cir. 2016); *see Duvall v. County of Kitsap*, 260 F.3d 1124, 1136, 1139 (9th Cir. 2001) (entity "must consider the particular individual's need"). The records reflect no individualized assessment of any requested modification. Compl. ¶ 94.

Defendants identified no fundamental alteration, and the direct-threat defense concerns "a significant risk to the health or safety of others." 42 U.S.C. § 12182(b)(3). Safety may bear on whether a modification is reasonable, but it is a reason, not a conclusion, and Defendants cannot

convert an unexplained rationale into a defense on a Rule 12 motion. Their own records undercut any categorical claim of infeasibility: they documented locked earrings "that cannot be removed due to locks," left them in place, and had already assigned a one-to-one observer. Compl. ¶¶ 30, 43. Reasonableness is a factual question that cannot be resolved against Plaintiff on the pleadings. *See Fortyune*, 364 F.3d at 1083-84.

The classification theory is separately pleaded. The one-to-one order, the suicide-precaution regime entered "per facility policy," and the attendant restrictions all issued within eighteen minutes of arrival, before any physician examined her, and the records contain no individualized assessment at any point. Compl. ¶¶ 30, 92. Defendants' own triage entry described her as "AMBULATORY WITH STEADY GAIT, A&OX 4," and their physician recorded her as "[w]ell-appearing, no acute distress." Compl. ¶ 20. Section 12182(b)(1)(A)(i) reaches a class of individuals as well as an individual, so uniform application of the same classification to other patients is no answer.

**Sex discrimination.** The motion concedes that "a sex-designation field within the medical record changed during the hospitalization." Mot. 8:13-15. Its objection, that Plaintiff does not know who made the change or whether it was automated, Mot. 8:15-17, is a demand for facts within Defendants' exclusive control. *Soo Park*, 851 F.3d at 928; *see* Section B. Plaintiff pleads both mechanisms in the alternative and identifies the discovery that will resolve them. Compl. ¶ 99.

Knowledge is not in doubt. The instrument Defendants received states Plaintiff's transgender status, name, and pronouns, and their medication lists carry her estradiol, progesterone, and testosterone microdose. Compl. ¶¶ 16, 99. Their records recorded her as female through two full days of care across the emergency department note, history and physical, face

sheets, observation notices, and pharmacy note. Compl. ¶¶ 49, 99. Nothing in the records accounts for the change. Compl. ¶ 99.

The change was not confined to a demographic field. At 5:28 p.m. on July 23 it rewrote the reference ranges against which Plaintiff's results are read: creatinine moved from .57-1.11 to .72-1.25, hemoglobin from 11.5-16.0 to 12.5-17.5, and the hematocrit, ALT, and BUN ranges shifted with them. Compl. ¶ 50. The change carried into the discharge summary and into chart fields bearing CommonSpirit's author designation modified after that summary was signed. Compl. ¶ 51. Plaintiff's primary theory requires no more: the benefit denied was accurate sex-specific clinical reporting, and the characteristic Defendants altered to produce the denial was sex itself. That theory does not require the Court to resolve the reach of gender-identity coverage. Plaintiff pleads gender-identity discrimination in the alternative.[9]

**Section 504.** Count IX is a past-discrimination claim and does not depend on any showing that Plaintiff will return. Compl. ¶ 97. Deliberate indifference requires knowledge that harm to a federally protected right is substantially likely and a failure to act on it. *Duvall*, 260 F.3d at 1139. Notice exists where the plaintiff requested accommodation, the need was obvious, or the accommodation was required by law, and no formal request is needed where the entity otherwise knew of the plaintiff's needs. *Id.*; *A.G.*, 815 F.3d at 1207. Plaintiff pleads notice from her instrument, her express requests, and Defendants' own records, and pleads that they neither investigated nor offered anything. When she objected that they were obstructing her litigation,

[9]Section 1557 incorporates Title IX's prohibited ground and enforcement mechanisms. 42 U.S.C. § 18116(a). Count X rests on that text, not on any regulation. Compl. ¶ 98. Under *Bostock v. Clayton County*, 590 U.S. 644 (2020), Title IX discrimination on the basis of sexual orientation is sex discrimination, *Grabowski v. Arizona Board of Regents*, 69 F.4th 1110, 1116-18 (9th Cir. 2023), and the same reasoning reaches gender identity. Plaintiff seeks only economic and nominal damages on Counts IX, X, and XII. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022).

they told her the Hospital had telephones. When she objected to removal of the safety device, they threatened to cut it off. Compl. ¶ 96.

**I. Counts XI and XII reach coercion, not just adverse action.**

Dignity Health argues that Plaintiff fails to allege adverse action because of protected conduct. Mot. 8:22-24. Section 12203(b) is not an adverse-action provision. It makes it unlawful "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of" protected rights. A threat to destroy the very device whose retention is the requested modification is coercion within those terms.

"Pursuing one's rights under the ADA constitutes a protected activity." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004). Plaintiff handed Defendants a written instrument containing her modification requests, told staff their conduct violated it, objected to the lorazepam and to removal of the device, asked that her agent remain, and asked for legal counsel and Risk Management. Compl. ¶ 102.

The motion's timing argument, that many challenged actions preceded the protected conduct, Mot. 8:25-27, fails on the Complaint's face. Plaintiff presented the instrument at admission, before the responses she pleads as coercion. A nurse who reviewed it asked whether she had "downloaded this from the internet," and later whether she was trying to scare them. Compl. ¶¶ 17, 103. Staff then threatened to cut the device from her wrist, put Ms. Ryan out of the building with Plaintiff's clothing, telephone, laptop, and case files, and denied her the complaint channels NRS 449A.118(3) required them to disclose. Compl. ¶ 103. The pleaded effect is that Plaintiff stopped asserting her rights. Under subsection (b), that chilling is the violation.

**J. Plaintiff has standing to seek prospective relief.**

Dignity Health says Plaintiff alleges "only a completed hospitalization" and "speculates" about future care. Mot. 9:10-16. Paragraph 54 says more, and on a Rule 12 motion it is taken as true.

A plaintiff may show likely recurrence by showing that the injury "stems from" a written policy, because "there is an implicit likelihood of its repetition in the immediate future," or that the harm is part of a "pattern of officially sanctioned ... behavior." *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001); *accord Fortyune*, 364 F.3d at 1081. Plaintiff pleads both.[10] The suicide-precaution regime was entered "per facility policy," the false directive certification was completed on a standardized instrument through a standard registration workflow, and "L2K" is a category built into Defendants' operational systems. Compl. ¶¶ 30, 54-55. And Defendants' chart reflects encounters at the Siena and San Martin campuses in March, May, and July 2026, with the same "L2K" classification applied to the same patient at both. Compl. ¶¶ 25-26, 54.

Plaintiff also pleads intent to return. She resides in Clark County with chronic conditions requiring continuing care, requires intravenous infusions three times weekly through an implanted port whose complications can require hospital-level evaluation, has limited practical hospital options, and holds an operative directive naming Defendants' facilities as acceptable for her care. Compl. ¶ 54. That is intent to return to a facility where the challenged practices remain in force. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944, 949-50 (9th Cir. 2011) (en banc).

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), does not hold otherwise. Recurrence there depended on the plaintiff being stopped again and officers again applying a chokehold

[10] Injuries "can stem from a failure to take action as well as from affirmative conduct," *Armstrong*, 275 F.3d at 863, including Defendants' failures to route the instrument, notify the agent, and investigate the requested modifications.

without provocation. *Id.* at 105-06. The *Lyons* line is "not apposite" where plaintiffs "need not engage in unlawful conduct to become subject to the unlawful practices they seek to enjoin." *Armstrong*, 275 F.3d at 866. Plaintiff's recurrence chain runs through nothing more than her need for medical care.

In any event, Plaintiff seeks prospective relief only on Counts VIII and XI. Compl. ¶¶ 90, 101. Counts IX, X, and XII seek damages for completed discrimination, and the standing argument would not touch them.

**K. Supplemental jurisdiction is premature.**

Dignity Health's final request assumes the dismissal of every federal count. Mot. 9:19-26. Because the federal counts survive, 28 U.S.C. § 1367(c)(3) is not triggered. Even if some federal claims were dismissed, the state-law counts arise from the same admission, instrument, and restrictions, and separate proceedings would require two courts to resolve the same questions on the same evidence. Compl. ¶¶ 11-12.

**L. Any dismissal should be with leave to amend.**

If the Court finds any count deficient, dismissal should be without prejudice and with leave to amend. Leave should be granted "unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts," a rule "particularly important for the pro se litigant." *Lopez v. Smith*, 203 F.3d 1122, 1127, 1130-31 (9th Cir. 2000) (en banc) (citation and internal quotation marks omitted). This Court applies that rule where "it is not clear that amendment would be futile." *Waggoner*, No. 2:21-cv-01312-APG-EJY (D. Nev. Apr. 30, 2022) (quoting *Lopez*, 203 F.3d at 1127). Dignity Health has argued futility as to nothing, including the five counts it asks the Court to dismiss with prejudice.

**IV. Conclusion**

Plaintiff respectfully requests that the Court deny Defendant Dignity Health's Motion to Dismiss in its entirety. In the alternative, Plaintiff requests that any dismissal be without prejudice and with leave to amend.

DATED this 18th day of November, 2026.

Respectfully submitted,



Jade Riley Burch
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I served a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT DIGNITY HEALTH'S MOTION TO DISMISS COMPLAINT** upon all counsel of record through the Court's CM/ECF electronic filing system

Keith A. Weaver, Esq.
Brad J. Shipley, Esq.
Pranava B. Moody, Esq.
LEWIS BRISBOIS BISGAARD & SMITH LLP
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, Nevada 89118
*Attorneys for Defendant Dignity Health*

DATED this 18th day of November, 2026.

Respectfully submitted,

Jade Burch

Jade Riley Burch
Plaintiff, Pro Se